UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiffs,<br><br> v.<br><br>SOUTHERN CALIFORNIA EDISON, COMPANY,<br><br>    Defendants. | 1:01-CV-5167 OWW DLB<br><br>ORDER RE REQUEST FOR RECONSIDERATION AND STRIKING EXPERT OPINIONS OF KEVIN MARA |

**I.   INTRODUCTION**

On July 12, 2005, the magistrate judge issued an order denying Defendant Southern California Edison's ("SCE") motion to strike the opinions of Plaintiff's expert Kevin Mara and denying Defendant's alternative request to file a supplemental/rebuttal expert report.  Doc. 250.  Before the district court is Defendants request for reconsideration of the magistrate's order. Doc. 260, filed July 17, 2005.

**II.   BACKGROUND**

The United States filed this lawsuit seeking to recover damages resulting from the "Big Creek Fire" in the Sierra National Forest.  Doc. 1, filed Feb. 9, 2001.  Plaintiffs allege that the fire originated on the grounds of one of SCE's hydroelectric powerhouses.  Initially, SCE admitted that the

1

terms of its Federal Energy Regulatory Commission (FERC) licenses applied to the facilities that allegedly sparked the fire. However, Edison was later permitted to withdraw its admissions concerning the applicability of the FERC licenses. Doc. 150, filed Oct. 22, 2004. On February 6, 2005, the district court modified the scheduling order to permit further discovery, including further disclosures of experts. Doc. 211. Specifically, the revised scheduling order set April 5, 2005 as the deadline for "further disclosure of experts" and May 5, 2005 as the deadline for "supplemental expert disclosure." *Id*. at 2. The district court also stated that "either side may disclose any further experts by April 5th, and any rebuttal or supplemental experts to the new experts by May 5th."

On April 5, 2005, Edison designated Joel Prehiem and Geoffrey Rabone, both Edison employees, as expert witnesses. The United States disclosed no expert on this date.

On May 5, 2005, the United States designated Kevin J. Mara and Cynthia A. Whelan as experts. The United States later withdrew Ms. Whelan as an expert. Mr. Mara's expert report was provided to SCE along with the May 5, 2005 disclosure.

On May 23, 2005, Edison moved to strike Mr. Mara's opinion and on June 3, 2005, Edison served a "supplemental disclosure of rebuttal expert, designating Donald Clark.

In a decision issue July 12, 2005, the magistrate judge found that the district court "did not intend to limit the May 5th designation to supplementation to an initial disclosure or rebuttal to other experts designated." In the alternative, even if the modified scheduling order only permitted the desigation of

rebuttal witnesses on May 5, 2005, the magistrate judge's July 12, 2005 order found that Mr. Mara's opinion was proper rebuttal testimony.

### III. STANDARD OF REVIEW

A magistrate judge's non-dispositive order is subject to a "clearly erroneous or contrary to law" standard. *See* Local R. 72-303(f); *see also* Fed. R. Civ. P. 72(a). The clearly erroneous standard, "which applies to a magistrate judge's findings of fact, is significantly deferential, requiring a definite and firm conviction that a mistake has been committed." *Green v. Baca*, 219 F.R.D. 485, 490 (C.D. Cal. 2003). Legal determinations, however, are subject to the "contrary to law" standard, which "permits independent review of purely legal determinations by the magistrate judge." *Id*.

### IV. DISCUSSION

**A.   Interpretation of the District Court's Modified Scheduling Order.**

At the core of this dispute is the language used by the district court in the February 6, 2005 modified scheduling order and oral clarification. Interpreting the language of a court order is a question of law, *see Williams v. Principi* 310 F.3d 1374, 1377 (Fed. Cir. 2002), and is therefore subject to independent review by the district court under the "contrary to law" standard.

Here, the magistrate judge correctly concluded that the district court "assumed responsibility for setting dates for

**3**

disclosure of expert witnesses limited to the applicability of the FERC licenses thereby rendering Rule 26(a)(2)(C) inapplicable." The magistrate judge then found that

> The language used by the Court is not as limiting as argued by Edison. The Court set April 5th as the initial deadline for designating experts regarding applicability of the FERC licenses and May 5th as the deadline for designating additional experts in this limited area. The [district] Court did not intend to limit the May 5th designation to supplementation to an initial disclosure or rebuttal to other experts designated. The United States' designation of Mr. Mara and the production of his corresponding report on May 5, 2005 was therefore timely under the modified scheduling order.

The district court, having reviewed its own order and related statements on this issue, finds that the magistrate judge's interpretation is incorrect.

First, the district court did "intend to limit the May 5th designation to supplementation to an initial disclosure or rebuttal to other experts designated." The plain language of the revised scheduling order reveals as much. Here, the revised scheduling order limited further discovery to "issues raised by Defendant Southern California Edison's withdrawal of admissions concerning the applicability of the FERC licenses in this case." April 5, 2005 was set as the deadline for "further disclosure of experts," while May 5, 2005 was set as the deadline for "supplemental expert disclosure." *Id*. at 2. The district court orally expanded the May 5, 2005 deadline to also include rebuttal experts in stating that "either side may disclose any further experts by April 5th, and any rebuttal or supplemental experts to the new experts by May 5th." The district court did not, however, invite the United States to make initial expert

**4**

disclosures on May 5, 2005.  The May 5, 2005 order specifies that any new experts were to be designated by April 5, 2005.  The oral order clarifies that the May 5 designations were to be of any rebuttal or supplemental experts to the new experts.  This was to prevent any party from "laying in the weeds" and designating a new expert on subjects not addressed by the April 5 designated experts.

SCE designated two experts on or before this deadline.  The United States disclosed no experts by the April 5, 2005 deadline, choosing instead to designate an Kevin Mara on May 5, 2005.

**B.   Mr. Mara Cannot Be Considered a Supplemental Expert.**

Mr. Mara cannot be considered a "supplemental" expert under the generally-accepted definition of that term.  The designation of "supplemental" experts "is an ongoing obligation of the parties to correct earlier opinions disclosed by an expert.  It does not refer to the disclosure of a new expert after the court-ordered deadline for simultaneous disclosure." *Hampton v. Schimpff*, 188 F.R.D. 589, 590 (D. Mont. 1999).[1]  Here, Kevin Mara was not initially designated (nor was any other individual designated) as an expert on the applicability of the FERC licenses before May 5, 2005.  It is improper to allow his new

---

[1] *Hampton* concerns the use of the term "supplemental in a case governed by Federal Rule of Civil Procedure 26," the timing provisions of which no longer apply here because of the amended scheduling order.  Nevertheless, nothing in the amended scheduling order alters the applicability of the *Hampton* court's definition of the term "supplemental," which is the addition of expert information to amplify, explain, or correct to make not misleading previously disclosed expert opinions and information.

opinions which do not supplement (i.e., correct or clarify) his earlier opinions.

### C. The Magistrate Judge's Conclusion that Mr. Mara's is a Proper Rebuttal Expert is Clearly Erroneous.

Determining whether Mr. Mara's opinions are properly considered rebuttal opinions demands an examination of his opinions *vis-a-vis* those offered by SCE's experts. Evidence is "rebuttal" evidence if it is "intended solely to contradict or rebut evidence on the same subject matter identified by another party..." Rule 26(a)(2)(C); *see also Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. 1998).[2]

The magistrate judge concluded that Mr. Mara's was properly designated as a rebuttal expert:

> Even if the Court were to interpret Judge Wanger's order to only allow designation of rebuttal experts on May 5, 2005, the designation of Mr. Mara was appropriate in that it responds to the opinions of Edison's experts Mr. Rabone and Mr. Preheim.
>
> Mr. Rabone identifies Exhibit M to the licenses in question (for FERC Project Nos. 67 and 2175). Exhibit M specifies the electrical equipment of the project. Mr. Rabone determined, based on a review of FERC orders approving revised Exhibit M's for Project Nos 67 and 2175, that certain revised Exhibit M's were in effect at the time of the Big Creek fire. He then confirmed that in the course of his work on re-licensing Edison's Big Hydro Facilities, he had never come across any FERC license or exhibit or document that reflects that the 12KV Substation is under FERC license.
>
> Mr. Preheim describes the electrical function of the 12KV Substation and the distribution lines emanating from it. He states that the basic function

---

[2] Again, although the timing set forth in Rule 26 does not apply in this case, the revised scheduling order does not suggest a different meaning should be ascribed to the term "rebuttal."

**6**

```
                and purpose of the substation at Big Creek No. 2 is to
                step up power received from the powerhouse from 7KV to
                12KV and distribute it to end users in the Big Creek
                area. He then describes the service provided from the
                three lines that emanate from the substation.

                Mr. Mara responds to these opinions by analyzing
                the nature and function of the 12KV Station and the
                electric power lines that emanate from it and then
                comparing those physical findings with the description
                of such works in the FERC licenses and exhibits. Unlike
                Mrs. Rabone and Mr. Preheim, he concludes that the
                terms of the licenses refer to the substation. While
                Mr. Mara uses a different analysis, he, like Edison's
                experts, opines regarding the applicability of the FERC
                licenses based on an analysis of the substation.
```

In his expert report, Mr. Mara offers the following five opinions:

(1) "The project boundary of Project 2175 encompasses the site of the 12kV step-up substation." Expert Report of Kevin Mara, Ex. 1 to Decl. Of Kirk Sheriff at 3-4.

(2) "Electrically, the 12kV step-up station is an appurtenance to the Powerhouse and not a separate substation." *Id*. at 4-5.

(3) "The 12kV step-up station is included as a project work in the combined projects of Project 67 and Project 2175." *Id*. at 5-11.

(4) "Not all of the Project(s) are contained in the description of the Project(s)." *Id*. at 12.

(5) "The Fault that occurred on August 24 1994 was on the 7.2kV bus of the 12kV step-up station." *Id*. at 12-14.

The United States argues that the magistrate judge's conclusion was not clearly erroneous and maintains that each of

7

Mr. Mara's five areas of opinion "responds to issues raised by SCE's expert disclosures of Mr. Rabone or Mr. Preheim." Doc. 267 at 16.

With respect to the first area of opinion the United States points to Mr. Rabone's declaration, in which Mr. Rabone states:

> In the course of my work on the re-licensing of Edison's Big Creek Hydro Facilities, I have never reviewed or otherwise been made aware of any license or exhibit thereto, or any order, correspondence, or other document from the Federal Power Commission or FERC that states or reflects that a 12kV substation near Big Creek Powerhouse Nos. 2 and 2A is licensed by the Federal Power Commission or FERC.

Rabone Decl., Ex. 9 to Kimball Decl., at ¶8. The United States then offers Mr. Mara's opinions, "based on [his] review of the site and his comparison of the physical site with maps and exhibits to the FERC licenses," as confirmation "that the 12kV substation is in fact depicted on a FERC exhibit, and is located within the FERC-licensed project area." Doc. 267 at 17. The United States maintains that this is somehow responsive to Mr. Rabone's opinion "that there was no document reflecting that the 12kV station was licensed by FERC." The United States misinterprets import of Mr. Rabone's statement. *Id*. Mr. Rabone merely asserts that he was never made aware of any such document. Mr. Mara's extensive discussion of the Project 2175 licenses and exhibits is not a rebuttal to any statement made by Mr. Rabone. Rather, this portion of Mr. Mara's report consists entirely of legal conclusions that are not properly the subjects of expert opinion. *See McHugh v. United Serv. Automobile Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999).

The United States submits that Mr. Mara's second area of

**8**

1  opinion -- that "[e]lectrically, the 12kV step-up station is an
2  appurtenance to the Powerhouse and not a separate substation" --
3  is responsive to opinions offered by Mr. Preheim.  To support
4  this assertion, the United States points to two portions of Mr.
5  Preheim's deposition in which counsel for the United States <u>asked
6  Mr. Preheim to read portions Mr. Mara's report and invited Mr.
7  Prehiem to criticize the report</u>.  *See* Preheim Depo. at 22 -40.
8  The United States then asserts that these <u>invited criticisms</u> are
9  "opinions concerning whether the transformers at the 12kV station
10 were electrically part of the powerhouse and whether they formed
11 a separate substation."  Doc. 267 at 18.  The United States
12 cannot justify the admission of Mr. Mara's report with such
13 circular reasoning.
14      Mr. Mara's third opinion -- that "[t]he 12kV step-up station
15 is included as a project work in the combined projects of Project
16 67 and Project 2175" -- is also not proper rebuttal evidence.
17 The United States first points to a single line from Mr. Rabone's
18 declaration, where Mr. Rabone states that "...the substation was
19 never included in the FERC licenses as a project work."  Ex. 9 at
20 ¶9.  However, the United States quotes Mr. Rabone out of context.
21 The entire paragraph from which this phrase was excerpted is as
22 follows:

> Edison has applied at times to delete from FERC
> hydroelectric power project licenses issued to Edison
> certain facilities that no longer serve as project
> works, including such facilities from Project Nos. 67
> and 2175.  However, Edison has never sought from FERC
> or obtained an order deleting or removing the 12kV
> substation near Big Creek Powerhouse Nos. 2 and 2A from
> the FERC licenses for Project Nos. 67 or 2175, ***because
> the substation was never included in the licenses as a
> project work***.

**9**

1 *Id.* The highlighted phrase is an argument made in support of Mr.
2 Rabone's assertion that Edison has never sought to delete the
3 12kV substation from the licenses.  The United States also
4 highlights Mr. Preheim's deposition testimony addressing which
5 power lines might be considered "ancillary" as that term is used
6 in a particular portion of one of the FERC licenses.  Mr. Preheim
7 acknowledged in his deposition that he reviewed a particular
8 paragraph in the Project 67 license to identify which power lines
9 were meant by the phrase "small ancillary lines" found in that
10 paragraph.  This exercise was apparently undertaken by Mr.
11 Preheim to aid SCE's in responding to one of the United States'
12 interrogatories.  The United States attempts to characterize Mr.
13 Mara's detailed and expansive analysis of the FERC licenses, *see*
14 Mara Report at 5-11, as "rebuttal."  It might as well thread an
15 elephant through the eye of a needle.  Mr. Mara's opinions in
16 this section touch upon almost every conceivable interpretive
17 application of the FERC licenses.  Even if Mr. Mara's extensive
18 legal conclusions were admissible expert testimony, which they
19 are not, this section of the report cannot fairly be
20 characterized as rebuttal to any of the opinions offered by SCE's
21 experts.

22      The arguments offered by the United States regarding Mr.
23 Mara's fourth and fifth opinions are equally unavailing.  The
24 fourth opinion purports to rebut Mr. Rabone's description of
25 Exhibit M to the Project 67 and 2175 license exhibit as a
26 "description of the electrical and transmission equipment in the
27 project."  Rabone Decl. at ¶¶ 2, 5.  In response, Mr. Mara
28 describes several components, such as "roads, bridges, culverts,

guardrails, gates, etc.," that are not listed in Exhibit M. Essentially, in this section, Mr. Mara offers his own factual observations and conclusions that do not conflict with Rabone's description of Exhibit M in any way. Again, the United States is trying to slip Mr. Mara's report in through the back door.

Mr. Mara's fifth area of opinion discusses Mr. Mara's own theories as to how and where the fire originated. The United States does not argue that Mr. Rabone or Mr. Prehiem opined as to the origin of the fire, but suggests that this section of Mr. Mara's report responds to SCE's claim "that the transformers in the 12kV station are part of a local 12kV distribution network." Doc. 267 at 20. Although Mr. Mara's opinions as to the origin of the fire may indirectly address the relationship between the 12kV station and the 12kV local distribution network, the thrust of his argument is unrelated to any opinions offered by SCE.

### V. CONCLUSION

For the reasons set forth above, Defendants motion for reconsideration and to strike the expert opinions of Dr. Kevin J. Mara is **GRANTED.**

**SO ORDERED.**
**Dated: September 23, 2005**

/s/ OLIVER W. WANGER

_____
**Oliver W. Wanger**
**UNITED STATES DISTRICT JUDGE**